U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

2012 MAY 29  PM 3: 15

CLERK
BY _____
DEPUTY CLERK

| | |
|---|---|
| Nizam Ahmad, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 5:10-cv-310 |
| ) | |
| International Business Machines ) | |
| Corporation, ) | |
| ) | |
| Defendant. ) | |

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS COUNTS II AND III OF THE SECOND AMENDED COMPLAINT, GRANTING DEFENDANT'S MOTION TO STRIKE, AND DENYING PLAINTIFF'S MOTION TO AMEND THE SECOND AMENDED COMPLAINT**
(Docs. 43, 75 and 83)

Plaintiff Nizam Ahmad brings this action claiming that Defendant International Business Machines Corporation ("IBM") wrongfully terminated his employment on the basis of his age, religion, national origin, race and/or ethnicity. Now before the court is IBM's motion to dismiss three of the six Counts asserted in Mr. Ahmad's Second Amended Complaint.[1] Specifically, IBM moves to dismiss Mr. Ahmad's claims under the Older Workers Benefits Protection Act ("OWBPA") (Count I), the Age Discrimination in Employment Act of 1974 ("ADEA") (Count II), and 42 U.S.C. § 1981 (Count III). The court held a hearing on IBM's motion to dismiss on March 8, 2012. At the conclusion of the hearing, the court dismissed Count I on the record. Counts II and III remain pending.

Also before the court is IBM's motion to strike Mr. Ahmad's second memorandum in opposition to the motion to dismiss. (Doc. 75.) Finally, Mr. Ahmad has

---

[1] The motion to dismiss initially addressed the First Amended Complaint. Because the Second Amended Complaint does not alter Mr. Ahmad's substantive claims, and pursuant to the parties' agreement, the court will apply IBM's arguments for dismissal to the Second Amended Complaint.

moved to amend his Second Amended Complaint "[i]f the Honorable Court feels that Plaintiff did not file his Complaint properly." (Doc. 83 at 15.) IBM is represented by Patricia M. Sabalis, Esq. Mr. Ahmad is representing himself.

I.  **Factual and Procedural Background.**

The following facts are derived from the Second Amended Complaint and the attachments thereto. Mr. Ahmad was initially employed by IBM in Vermont between 1994 and 2002. On September 23, 2001, shortly after the terrorist attacks of September 11, 2001, he reportedly had a letter published in the "It's My Turn" section of the *Burlington Free Press*. The letter stated, among other things, that "the idea of assassination of innocent people is totally against the teaching of Islam," and that "Islam is against those who are fanatics." Mr. Ahmad's photograph was published in the same newspaper the following day under the heading "Muslim spread[s] message of peace." (Doc. 73 at 3.)

On November 3, 2001, IBM allegedly declared Mr. Ahmad as "surplus." *Id.* at 4. On or around December 1, 2001, IBM notified him that he would be terminated effective January 31, 2002. Mr. Ahmad claims that prior to his termination, his performance reviews at IBM had been satisfactory or better. He is Muslim, originally from Pakistan, and was forty-seven years old at the time of his termination.

In October 2003, a group of former IBM employees, including Mr. Ahmad and others in a putative class of similarly situated persons, brought a lawsuit against IBM in the United States District Court for the Northern District of California, alleging that their respective terminations violated the ADEA and OWBPA. *See Syverson v. Int'l Bus. Mach. Corp.*, Case No. 03-cv-04529-RMW. In or around January 2009, a group of *Syverson* plaintiffs accepted a settlement from IBM, and the case was dismissed with prejudice. Mr. Ahmad did not accept the settlement offer.

In April 2004, IBM re-hired Mr. Ahmad as a senior project manager. In June 2004, he traveled to Rochester, Minnesota to meet his manager and attend a department meeting. He claims that until this time, his job performance had been "satisfactory or better." This "favorable-feedback pattern" allegedly changed, however, after Mr. Ahmad

revealed during a social gathering his "practice of the dietary restrictions, including restrictions on drinking alcohol, that are associated with Plaintiff's religious (Muslim) belief." (Doc. 73 at 5.)

In October 2004, Mr. Ahmad's manager allegedly offered him a severance package. Mr. Ahmad declined, and instead asked for an internal investigation. The Second Amended Complaint alleges, without elaboration, that the investigation "had discrepancies." Mr. Ahmad claims that he was "abruptly" fired by IBM on December 21, 2004. *Id.*

The Second Amended Complaint sets forth six claims for relief. The first claim is that a Release and Covenant not to Sue ("Release") signed by Mr. Ahmad at the time of his first termination in 2002 violated the OWBPA, and thus "does not prohibit Plaintiff from maintaining his action for age discrimination under the ADEA." *Id.* at 6. As noted above, Count I was dismissed by the court at oral argument on the ground that the OWBPA does not authorize an affirmative claim for damages. Count II alleges that Mr. Ahmad was terminated because of his age, in violation of the ADEA. Count III asserts that Mr. Ahmad's religious preference, national origin and ethnicity were "material" and "substantial" factors in his 2002 termination, and that IBM therefore violated his rights under 42 U.S.C. § 1981. Counts IV, V, and VI set forth state law claims of breach of implied contract, unlawful employment discrimination under 21 V.S.A. § 495, and defamation, respectively.

IBM now moves to dismiss Counts II and III, arguing (1) that Mr. Ahmad failed to file an administrative charge prior to bringing his ADEA claim, and did not file the claim within the statutory limitations period, and (2) that Mr. Ahmad's cause of action under 42 U.S.C. § 1981 is untimely. The motion to dismiss pertains only to Mr. Ahmad's 2002 termination, and not to his subsequent re-employment at IBM in 2004.

**II.     Conclusions of Law and Analysis.**

    **A.     Standard of Law.**

IBM brings its motion under Federal Rule of Civil Procedure 12(b)(6). On a motion to dismiss pursuant to Rule 12(b)(6), all factual allegations in the complaint are

3

accepted as true, and all inferences are drawn in favor of the plaintiff. *See Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1174 (2d Cir. 1993). "'The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

To survive a motion to dismiss filed pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In other words, plaintiffs must allege sufficient facts to "nudge[ ] their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. "A claim has facial plausability when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

In reviewing a complaint for legal sufficiency under Rule 12(b)(6), a court is limited to the facts "contained within the four corners of the complaint." *Goldberg v. Danaher*, 599 F.3d 181, 183-84 (2d Cir. 2010). However, a court may also review attachments to the complaint, documents that are incorporated by reference, and documents that are heavily relied upon in, and thus integral to, the complaint. *See Yung v. Lee*, 432 F.3d 142, 146 (2d Cir. 2005). A court may also dismiss under Rule 12(b)(6) on the basis of an affirmative defense if that defense "appears on the face of the complaint." *Staehr v. Hartford Fin. Servs. Grp.*, 547 F.3d 406, 426 (2d Cir. 2008). Although the court must accept the factual allegations of a complaint as true, it is "'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Finally, pleadings by *pro se* litigants must be construed liberally. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Chavis v. Chappius*, 618 F.3d 162, 171 (2d Cir. 2010).

### B. Whether Mr. Ahmad's ADEA Claim Is Timely.

IBM contends that Mr. Ahmad's ADEA claim set forth in Count II should be dismissed because he failed to file a discrimination charge with either the Equal

4

Employment Opportunity Commission ("EEOC") or the Vermont Attorney General's Office prior to filing suit. IBM also contends that, even if Mr. Ahmad did not have to file a discrimination charge, his ADEA claim is untimely.[2]

Filing an administrative charge is a prerequisite to filing suit under the ADEA. *See* 29 U.S.C. § 626(d). Mr. Ahmad contends that "it would have been useless" to file a discrimination charge with the EEOC because other *Syverson* plaintiffs had already done so, and the EEOC would have simply rendered "the same determination." (Doc. 73 at 2.) The parties also agreed at oral argument that any such filing with the EEOC would have been untimely. IBM thus acknowledges that the court should not require Mr. Ahmad to now file a claim with the EEOC. It nonetheless argues that, even if relieved of this requirement, Mr. Ahmad's lawsuit is untimely.

Mr. Ahmad contends that, under the "single filing rule," he was allowed to "piggyback" onto the administrative charges filed by other *Syverson* plaintiffs. In *Tolliver v. Xerox Corp.*, 918 F.2d 1052 (2d Cir. 1990), the Second Circuit concluded that a plaintiff asserting a claim under the ADEA may assert the single-filing rule, and "piggyback" on previous discrimination charges brought by others similarly situated when bringing a separate lawsuit. *Tolliver*, 918 F.2d at 1057. In reaching this conclusion, the *Tolliver* court reasoned that "[t]he purpose of the charge filing requirement is fully served by an administrative claim that alerts the EEOC to the nature and scope of the grievance, regardless of whether those with a similar grievance elect to join a preexisting suit or initiate their own." *Id.* The court also required that, "where the grievances are alleged to arise throughout a large group . . . there must be some indication that the grievance affects a group of individuals defined broadly enough to include those who seek to piggyback on the claim." *Id.* at 1058.

---

[2] IBM first discusses the timeliness question in its reply memorandum. (Doc. 59 at 3-6.) However, the issue was initially raised by Mr. Ahmad in his opposition to the motion to dismiss, and was discussed by both parties at oral argument. (Doc. 56 at 4-5.) Because the issue has been fully brief and argued, it is now properly before the court. *See Ruggiero v. Warner-Lambert Co.*, 424 F.3d 249, 252 (2d Cir. 2005) (district court has discretion to consider an argument made for the first time in a reply brief); *Kowalski v. YellowPages.com, LLC*, 2012 WL 1097350, at *10 (S.D.N.Y. Mar. 31, 2012) (noting that reply papers may address new material issues raised in opposition papers).

5

The Second Amended Complaint does not provide any detail about the contents of the administrative claims filed by the *Syverson* plaintiffs. Even assuming that piggybacking is proper in this case, the court would need to further find that Mr. Ahmad's ADEA claim, filed over twenty-two months after the *Syverson* case concluded, was timely. IBM concedes that *Syverson* tolled the statute of limitations, *see Crown, Cork & Seal Co., Inc. v. Parker*, 462 U.S. 345, 354 (1983), but argues that "[o]nce the *Syverson* litigation ended, plaintiff had to file an individual lawsuit within the statute of limitations." (Doc. 59 at 4.) Indeed, "although a plaintiff may use the single filing rule to piggyback on the timely administrative charge of another, he must still satisfy the second condition by filing suit in federal court within the limitations period established by the ADEA." *Levy v. U.S. Gen. Accounting Office*, 1998 WL 193191, at *3 (S.D.N.Y. Apr. 22, 1998), *aff'd*, 175 F.3d 254 (2d Cir. 1999); *see also Tolliver*, 918 F.2d at 1059 ("The ADEA statute of limitations provides adequate assurance that stale claims will not remain viable.").

Prior to 1991, the statute of limitations for ADEA actions was two years from the date of discrimination, or three years from that date if the discrimination was willful. In 1991, Congress changed this limitations period "to a limit related to the processing of the administrative charge -- 90 days from the receipt of a right-to-sue letter. This limitation is similar to that of Title VII." *Bowers v. Xerox Corp.*, 1995 WL 880773, at *4 (W.D.N.Y. May 5, 1995) (citing 29 U.S.C. § 626(e); 42 U.S.C. § 2000e-5(f)(1)). Unlike Title VII, a right-to-sue letter is not a prerequisite to filing suit under the ADEA, as a plaintiff may also "wait 60 days after filing the EEOC charge." *Hodge v. New York Coll. of Podiatric Med.*, 157 F.3d 164, 168 (2d Cir. 1998); *see also Holowecki v. Fed. Express Corp.*, 440 F.3d 558, 563 (2d Cir. 2006). Because Vermont's state law also bars age discrimination, a Vermont resident has 300 days from the time he "knows or has reason to know of the injury that is the basis of the action" to file an EEOC charge. *Morse v. Univ. of Vermont*, 973 F.2d 122, 125 (2d Cir. 1992) (citations and internal quotation marks omitted); *see also Gadbois v. Rock-Tenn Co., Mill Div., Inc.*, 984 F. Supp. 811, 817 (D. Vt. 1997) (noting that Vermont residents have 300 days in which to file charge).

Here, Mr. Ahmad is "piggybacking" on administrative charges filed by other *Syverson* plaintiffs, so he is afforded the same limitations period as those plaintiffs. *See Bowers*, 1995 WL 880773, at *4 ("The rule that should apply, therefore, is that a plaintiff seeking to 'piggyback' onto the administrative charge of another would be subject to the same statute of limitations as those persons similarly situated upon whose charge he relies."). When a plaintiff has "piggybacked" in a class action, the limitations period is tolled while the action is pending, and begins again once the class ceases to exist. *See, e.g., Armstrong v. Martin Marietta Corp.*, 138 F.3d 1374, 1392 (11th Cir. 1998) (holding that limitations period commences when class is de-certified). Applying these principles to this case, the court assumes *arguendo* that Mr. Ahmad had the full ninety days, starting from the dismissal of *Syverson* on January 29, 2009, in which to file his own lawsuit. *See id.* (holding that class plaintiff who filed a civil action immediately had ninety days from de-certification order in which to bring suit); *cf. Crown, Cork*, 462 U.S. at 354 (holding that Title VII plaintiff who received notice of right to sue while class action was pending had ninety days from denial of class certification to file his own suit). However, Mr. Ahmad did not file his initial Complaint in this case until December 14, 2010, approximately twenty months beyond the expiration of the ninety-day deadline.

Mr. Ahmad next argues that his ADEA claim is timely because the *Syverson* court "neglected" to set a filing deadline for class plaintiffs who chose not to join in the settlement. (Doc. 56 at 4.) He cites no authority requiring such an order, and the court has found none. Mr. Ahmad further contends that an IBM "Agreement" (Doc. 1-1 at 2) allowing him 120 days in which to file suit post-*Syverson* was not binding because he did not sign the document. This argument, however, does not advance his cause because without the Agreement, and pursuant to 29 U.S.C. § 626(e), Mr. Ahmad had, at most, ninety days in which to bring an ADEA claim once the *Syverson* case was dismissed. Were the court to consider the Agreement as binding, he would have been allowed an additional thirty days. In either event, his ADEA claim is untimely, as it was filed nearly two years after the *Syverson* dismissal.

Indeed, in order for the court to accept Mr. Ahmad's ADEA claim as timely, it would have to find that there is *no* applicable limitations period. The *Tolliver* decision considered this possibility in the context of "piggybacked" claims, and concluded that the ADEA's statute of limitations "provide[d] adequate assurance that stale claims will not remain viable." 918 F.2d at 1059. Since 1991, that limitations period has been fixed to the receipt of a notice of right to sue. 29 U.S.C. § 626(e). When a plaintiff is allowed to "piggyback" onto an EEOC charge filed by another, he will never receive his own right-to-sue letter. Accordingly, "if the Statute of Limitations depended only on their receipt of the letter, [the limitations period] would never run. Employers would face the possibility of defending against piggybacked claims brought years after the litigation brought by persons who had followed the proper administrative procedure had resolved their claims." *Bowers*, 1995 WL 880773, at *4. Such a result would run counter to the purpose of a limitations period, which serves to "guard against unfair surprises that result from the resurrection of stale claims." *In re Worldcom Secs. Litig.*, 496 F.3d 245, 253 (2d Cir. 2007); *see also United States v. Stelmokas*, 100 F.3d 302, 342 (3d Cir. 1996) (Aldisert, J., dissenting) ("[W]ith the exception of murder cases, all criminal and civil proceedings are rigorously circumscribed by fixed statutes of limitations.").

The Second Circuit has held that the ADEA's ninety-day limitations period may be subject to equitable considerations. *Holowecki*, 440 F.3d at 563 ("ADEA's time limit requirements are subject to equitable modification or estoppel . . . ."). For example, equitable tolling of a limitations period may be appropriate where "the employee was actively misled by his employer" or "was prevented in some extraordinary way from exercising his rights." *Miller v. Int'l Tel. & Tel. Corp.*, 755 F.2d 20, 24 (2d Cir. 1985). In general, equitable tolling is "rare and exceptional." *Zerilli-Edelglass v. N.Y.C. Transit Auth.*, 333 F.3d 74, 80 (2d Cir. 2003) (quotation marks omitted).

In this case, Mr. Ahmad has not made any showing that equitable tolling is appropriate with respect to his ADEA claim, and there are no facts before the court to support such an "exceptional" remedy. *Id.* To the contrary, it appears that he was aware of a potential age discrimination claim while the *Syverson* case was pending, but failed to

8

file his own claim in a timely manner once that litigation was dismissed. The court therefore finds that Mr. Ahmad's ADEA claim was not timely filed, and Count II of the Second Amended Complaint is DISMISSED insofar as it applies to Mr. Ahmad's termination in 2002.

### C. Whether Mr. Ahmad's Section 1981 Claim Is Timely.

IBM next argues that Count III of the Second Amended Complaint, which sets forth a claim under 42 U.S.C. § 1981, is untimely with respect to Mr. Ahmad's 2002 termination.[3] This court has held that a § 1981 claim "is subject to the four-year federal statute of limitations in 28 U.S.C. § 1658." *Brown v. Castleton State Coll.*, 663 F. Supp. 2d 392, 396 (D. Vt. 2009).[4] Accrual of the claim is determined by federal law, *Eagleston v. Guido*, 41 F.3d 865, 871 (2d Cir. 1994), which dictates that a cause of action accrues "when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Pearl v. City of Long Beach*, 296 F.3d 76, 79 (2d Cir. 2002). In employment discrimination cases, a claim ordinarily arises "on the date the employee learns of the employer's discriminatory conduct." *Flaherty v. Metromail Corp.*, 235 F.3d 133, 137 (2d Cir. 2000).

Mr. Ahmad argues that there is a question of fact as to whether his § 1981 claim should have been reasonably discovered within the applicable limitations period.[5]

---

[3] Section 1981 prohibits discrimination on the basis of race and national origin. 42 U.S.C. § 1981. The *Syverson* litigation did not toll the limitations period for this claim, as *Syverson* involved only claims of age discrimination.

[4] IBM points out that even if the limitations period is governed by state law, which would allow three years for personal injury claims under 12 V.S.A. § 512(4), and six years for claims of economic harm under 12 V.S.A. § 511, Count III would be untimely.

[5] At the March 8, 2012 motion hearing, Attorney Herbert Ogden sought leave to enter a limited appearance on behalf of Mr. Ahmad in order to present additional arguments with respect to the timeliness of the § 1981 claim. The court denied the request, as federal law does not allow limited appearances. *See O'Reilly v. New York Times Co.*, 692 F.2d 863, 868 (2d Cir. 1982); *Donovan v. State*, 2001 WL 179887, at *1 (D. Me. Feb. 16, 2001). After a short recess, Mr. Ahmad informed the court that he would be proceeding *pro se*. That same day, after the hearing, Mr. Ahmad filed a second memorandum in opposition to IBM's motion to dismiss. (Doc. 71.) The memorandum appears to have been drafted by Attorney Ogden, but was signed by Mr. Ahmad. *Id.* at 1, 5 ("The plaintiff, by Herbert G. Ogden, Esq. in a limited appearance, opposes the defendant's Motion to Dismiss . . . ."). Because the court denied Attorney Ogden leave to enter a limited appearance, it cannot accept his opposition

Although his argument lacks precision, he appears to be claiming that there is a minor discrepancy regarding the date on which he was declared "surplus."[6] Mr. Ahmad submits that he did not discover this discrepancy until he received IBM's discovery in "May-June 2008." (Doc. 73 at 4.) Mr. Ahmad contends that the discrepancy is important because it places the date he was declared "surplus" in closer proximity to his "It's My Turn" article in the *Burlington Free Press*. This temporal proximity, he argues, "establishes the necessary causal connection between [publication of the letter] and his termination." (Doc. 83 at 10.) He therefore argues that he should not be deemed to have discovered the basis for his cause of action until that time.

The court finds this argument without merit. It was Mr. Ahmad's 2002 termination that gave rise to any discrimination claim he may have, not the date on which he was declared "surplus." Indeed, the Second Circuit has held that "a claim will accrue when the plaintiff knows, or should have known, enough of the critical facts of injury and causation to protect himself by seeking legal advice." *Kronisch v. United States*, 150 F.3d 112, 121 (2d Cir. 1998) (citations omitted); *see also Heins v. Potter*, 271 F. Supp. 2d 545, 554 (S.D.N.Y. 2003) (noting in Title VII action that "[t]he law of accrual is concerned with a plaintiff's knowing that he has suffered an injury, not with any other facts that might support his cause of action.") The circuit has also held that the limitations period is "not tolled or delayed pending the employee's realization that the conduct was discriminatory unless [he] was actively misled by his employer." *Miller*, 755 F.2d at 23. In this case, Mr. Ahmad makes no allegation that he was actively misled about the reason for his termination.[7] He also knew enough "critical facts" – such as the

---

memorandum. Furthermore, the memorandum was effectively a sur-reply, and there is no provision in this court's Local Rules for such a filing. IBM's motion to strike the second opposition motion (Doc. 75) is therefore GRANTED. The court also notes that, had it accepted the memorandum, the filing would not have altered the court's ruling with respect to the timeliness of the § 1981 claim.

[6] The discrepancy appears to be approximately 28 days, which is the difference between the date on which he was allegedly declared "surplus" (November 3, 2001) and the date on which he was informed of his termination (approximately December 1, 2001). (Doc. 73 at 4.)

[7] Mr. Ahmad's most recent memorandum (Doc. 83) claims that IBM misled him in 2002 when it informed him that there was no work available. While this allegation is not asserted in the Second

10

allegedly positive feedback on his performance reviews, and the fact of the September 2001 *Burlington Free Press* Publication – to alert him to a potential discrimination claim.

Furthermore, Mr. Ahmad's alleged discovery of IBM's actual timing in declaring him "surplus" did not provide notice of a cause of action that was otherwise foreclosed. While some district courts have determined that two months is a dividing line for the purpose of showing causation, *see, e.g., Frisenda v. Inc. Vill. of Malverne*, 775 F. Supp. 2d 486, 512 (E.D.N.Y. 2011), the Second Circuit has held that periods longer than two months may also support an inference of causation. *See Espinal v. Goord*, 558 F.3d 119, 129-30 (2d Cir. 2009) (finding the passage of six months between the dismissal of plaintiff's lawsuit and an allegedly retaliatory act sufficient to support an inference of a causal connection); *Cioffi v. Averill Park Cent. School Dist. Bd. Of Educ.*, 444 F.3d 158, 167-168 (2d Cir. 2006) (finding a period just over three months close enough in time to establish an inference of causation); *Gorman-Bakos v. Cornell Co-op. Extension*, 252 F.3d 545, 555 (2d Cir. 2001) (finding four to five months between protected activity and adverse employment action sufficient temporal proximity to establish causation). Accordingly, Mr. Ahmad's discovery that the termination decision was made in November 2001, and not December 2001, does not justify his failure to file suit until nearly nine years later. *See Kronisch*, 150 F.3d at 121 ("A plaintiff need not have compelling proof of the validity of his claim in order for his claim to accrue.").

Finally, a § 1981 claim addresses discrimination on the basis of race, ancestry, or ethnic characteristics. *See Saint Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 613 (1987). Section 1981 does not reach claims based upon religion. *Id.* While Mr. Ahmad's publication in the *Burlington Free Press* allegedly pertained to the tenets of the Muslim faith, his race and ethnic characteristics were known to IBM long before his termination. Because the "crucial facts" relevant to his termination included Mr. Ahmad's race, his

---

Amended Complaint and therefore cannot be considered, the testimony upon which it is based offers no support for a discrimination claim. That testimony allegedly established that IBM initiated layoffs for "financial reasons," and forced a "staff reduction" even though "work had to be done." (Doc. 83 at 13.)

opportunity to commence litigation began, at most, within six years of the notice of termination in December 2001. *See Kronisch*, 150 F.3d at 121.

Pursuant to Second Circuit precedent, Mr. Ahmad's § 1981 claim accrued on the date of "the discriminatory act" in December 2001, and his initial Complaint, filed in December 2010, was untimely. *Miller*, 755 F.2d at 23. His § 1981 claim with respect to his termination in 2002 is therefore DISMISSED.

### D.   Whether Mr. Ahmad May Amend His Second Amended Complaint.

Mr. Ahmad has moved the court for leave to amend his complaint "[i]f the Honorable Court feels that Plaintiff did not file his Complaint properly." (Doc. 83 at 15.) Federal Rule of Civil Procedure 15(a) instructs that courts "should freely give leave" to amend a complaint "when justice so requires." Fed. R. Civ. P. 15(a). A motion to amend may be denied, however, when the proposed amendment would be futile. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000). This court's Local Rules require that a motion to amend be accompanied by a version of the proposed amendment "clearly designating additions and deletions." L.R. 15(a).

Here, Mr. Ahmad has not informed the court of any specific amendments to his Second Amended Complaint. Consequently, the court is unable to determine whether the proposed amendments would have merit, or should instead be denied as futile. The motion to amend is therefore DENIED WITHOUT PREJUDICE for lack of specificity.

### Conclusion

For the reasons set forth above, IBM's motion to dismiss Counts II and III of the Second Amended Complaint (Doc. 43) and motion to strike (Doc. 75) are GRANTED. Mr. Ahmad's motion to amend (Doc. 83) is DENIED WITHOUT PREJUDICE. SO ORDERED.

Dated at Rutland, Vermont in the District of Vermont this 29th day of May, 2012.

Christina Reiss, Chief Judge
United States District Court